IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00588-MSK-MEH

STOCKART.COM, LLC,

      Plaintiff,

v.

JONATHAN ENGLE,

      Defendant.

---

## RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Plaintiff's Motion for Entry of Default Judgment against Defendant pursuant to Fed. R. Civ. P. 55 [filed September 28, 2010; docket #29]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to this Court to conduct an evidentiary hearing and to submit proposed findings of fact and a recommendation for the disposition of the motion [docket #36]. The Court held a hearing on January 5, 2011 at which the Plaintiff appeared, represented by counsel, and no one appeared for Defendant. For the reasons stated herein, the Court recommends that the Motion be **granted in part and denied in part**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

## FINDINGS OF FACT

1.      Plaintiff Stockart.com, LLC, (hereinafter "Stockart") is a Colorado-based limited liability company that is organized in, and at all times material to this Complaint, operated from within, the State of Colorado.

2.      Stockart is in the business of licensing "rights managed" downloadable "high end" digital imagery through the Internet.  That is, Stockart obtains copyrights for illustrations created by various artists and offers the illustrations for sale on its website. The Stockart image database is available online via the Internet at www.stockart.com.

3.      Users who log on to the database can cause the database program to search the database to find images that might be suitable for their purposes.

4.      The database includes ten (10) images that are referred to herein as "Plaintiff's Registered Works," which are attached to the Complaint as Exhibit A.  Stockart typically registers a work if there has been a history of "theft" or appropriation without permission or payment.

5.      All authorized publications of Plaintiff's Registered Works have been published with copyright notice pursuant to the Copyright Laws of the United States.

6.      Plaintiff's Registered Works have been registered with the United States Copyright Office, by filing with the Copyright Office of the United States within the District of Columbia Forms VA and all materials and fees necessarily accompanying the same for the purposes of acquiring registration.

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

7.      Certificates of Registration were issued for Plaintiff's Registered Works and the registration information is attached as part of Exhibit A.

8.      Plaintiff Stockart.com, LLC is the sole owner of the copyright in Plaintiff's Registered Works, and all claims for infringement appurtenant thereto.

9.      Stockart has also been the owner of exclusive rights in the Plaintiff's Registered Works, and a beneficial owner of rights in the Plaintiff's Registered Works, at the times relevant to this matter.

10.     Stockart is also the owner of copyright in twenty-six (26) images referred to as "Plaintiff's Unregistered Works," which are attached to the Complaint as Exhibit B.

11.     Plaintiff's Registered Works and Plaintiff's Unregistered Works appear on Stockart's website with Stockart's copyright notices and licensing information.

12.     The copyright management information is electronically connected to the images on the website.  As a condition of using the website, users acknowledge that they will not remove the copyright management information from the works appearing on the website.

13.     Defendant Jonathan Engle is an individual whose last known residence was located in Los Lunas, New Mexico.

14.     Engle is a Graphic Designer, who does business as Relevant Studio.  He is engaged in the business of, among other things, selling corporate identity logos via the Internet.

15.     On or about January 11, 2007, Engle registered to do business with Stockart.com in Fort Collins, Colorado, by sending a check from Relevant Studio for the $350.00 registration fee.

16.     Subsequently, Engle engaged in extensive use of the www.stockart.com database to conduct searches of the images in the database.

3

17.     In the course of using the database, Engle received the "intentional infringer" warning which is displayed on the website when a user requests a search of the database. The warning states:

> Important Copyright Management Information Pursuant to 17 U.S.C. Chapter 12. This Web Site is Copyright Stockart.com, LLC 2007, Fort Collins, Colorado. The individual images on this site are copyright Stockart.com, LLC, (in behalf of the individual proprietors) 2007-1978. All Rights-Reserved. Images on this site may not be used without the express written consent of Stockart.com, LLC. Licenses are expressly conditioned upon payment to Stockart.com, LLC, of license fees in advance of use. Fee quotes are valid for 30 days from insurance, and are then void if not then paid in-full. Licenses are granted only by Stockart.com, LLC, from its Fort Collins, Colorado, offices.  Disputes concerning use of any image on this site will be resolved in the Courts of Colorado.  Please note: Only Stockart.com LLC, and no other party, is authorized or permitted to grant licenses or permissions for the use of the images on this site. Any party relying upon any other license or permission, express or implied, will be violating copyright law. Removal of images from this site, or their separation from the copyright management information on this site, or this notice, is not authorized and is a violation copyright law. Click below to acknowledge that you understand and agree.

18.     This warning appears on the screen prior to a search of the images in the www.stockart.com database.  Users must acknowledge their understanding of the content of the warning by clicking the "OK" button before they can perform a search.

19.     The www.stockart.com database tracks numbers of searches made by its registered users.  According to the database program, Engle searched the database a total of ninety-two (92) times.

20.     Consequently, Engle clicked the "OK" button approximately 92 times acknowledging the content of the warning and agreeing not only that all disputes concerning use of the images on the website were to be resolved in Colorado, but also not to use Stockart's images without the express written consent of Stockart.

21.     By clicking "OK," Engle induced Stockart to transmit images to Engle for viewing

with the understanding that their use would be subject to Stockart's prior approval and licensing fees.   22.   On or about June 27, 2008, Stockart ascertained that Engle had used one of Stockart's images without a license.  Stockart contacted Engle regarding the nonpayment, and Engle paid a license fee for the work, $395.00.

23.   Thereafter, Stockart discovered that Engle extracted a number of images, including the thirty-six (36) of Plaintiff's Registered Works and Plaintiff's Unregistered Works at issue here, from Stockart's database without paying the license fees (likely by using the "printscreen" function) and posted them on various websites offering them for sale to the public.  These websites include, without limitation, www.relevantstudio.com, www.coroflot.com, and www.logopond.com.

24.   In the course of extracting Plaintiff's Works from the Stockart database, Engle excised the copyright management information from Plaintiff's Registered Works and Unregistered Works, including the copyright notices, warnings against infringement (including the intentional infringer warning), licensing information connected with the work, and the artist information appearing on Plaintiff's website.

25.   In or about July 2008, Stockart notified Engle concerning payment for his use of the extracted images and issued an invoice for $18,700.00, which amounted to a reduced per image price of $275.00, which was less than the per image price previously paid by Engle, and less than what Engle, himself, was charging for use of Stockart's images.

26.   Engle refused Plaintiff's request for payment, ignored Plaintiff's certified mailings to reach him, and ignored Plaintiff's efforts to obtain payment.

27.   By offering Plaintiff's Registered and Unregistered Works to others via the various websites for reproduction and sale without the Plaintiff's copyright management information (i.e.,

copyright notice, Stockart's express warnings against infringement, and Stockart's clear statement that its permission was required for use), Engle knew that his removal of the information would induce, facilitate, and conceal that his publication of the works, and the subsequent reproduction, use, and sale of the Plaintiff's Registered and Unregistered Works, would infringe Stockart's copyrights.

28.    Thereafter, Stockart ascertained that Engle had, in fact, sold some of Stockart's images to various third parties, including, in one instance, for a product packaging scheme, and in another, as a corporate logo for an equestrian center.  Stockart contacted the purchasers of the images, who, in turn, contacted Engle.

29.    In response to these contacts, on or about April 3, 2009, Engle began to post statements on Internet blogs, including www.jonengle.com, LogoPond, and Twitter, saying that Stockart had engaged a lawyer to sue Engle, that Stockart sent him a bill for $18,000.00 for artwork he himself had created, that the Stockart artwork was stolen from him - that is, copied from his Logopond "showcase" and posted on Stockart's website - and that Stockart was contacting all of his clients with allegations of copyright infringement and ruining his reputation. The blogs contain links to a Twitter account, through which bloggers were able to contribute to Engle's legal defense fund in his purported counter-suit against Stockart.

30.    Engle's statements were false at the time they were published.  For example, Stockart had not sued Engle.  Also, the artwork was neither stolen nor copied from Engle, but was obtained from the artists named in Exhibit A, and a long list of other artists who authored the Unregistered Works identified in Exhibit B, in many cases a decade before Engle posted the work on the Internet websites.  In addition, Stockart did not contact all of Engle's clients.

31.     Engle's statements were made on Internet websites ("blogs") which are specifically oriented to the republication of the statements, in that the statements were repeatedly republished as a natural consequence of the forum in which they were communicated.

32.     Hundreds of responses to Engle's statements, including some from foreign countries, appeared on the blogs.  Engle's statements engendered public outrage, hostility, and animosity toward Stockart for allegedly suing Engle for his own work and for contacting all of his clients.

33.     Engle fomented the re-publication of his false statements by participating in the blog discussions, reinforcing the impression that Stockart had stolen his work, fanning the public outrage, and perpetuating through his comments the public misperception that Stockart was suing him for work Stockart stole from him and contacting all of his clients attempting to ruin his reputation and business.

34.     Stockart began to receive hate mail, threats, boycott notices, attacks on its website, and complaints from clients.  For several days, the influx of emails and telephone calls severely disrupted Stockart's business.

35.     Most messages reflected the caller's or writer's intent to cease doing business with Stockart and to recommend to others that they cease doing business with Stockart. In addition, Stockart's principal, Richard Askew, received three death threats.

36.     As a result of Engle's false statements, Stockart suffered severe financial injury to its Internet-based business.

    a.     For example, in 2006 and 2007, Stockart's license revenues totaled between $150,000.00 and $170,000.00.

    b.     In 2008, Stockart's license revenues totaled approximately $90,000.00.

Askew testified that the drop was likely due to the economic recession.

    c.        However, in 2009, Stockart's license revenues totaled approximately $24,000.00 and in 2010, the revenues dropped further to approximately $15,000.00.

37.    After April 2009, Stockart lost approximately 20-30 artists and $40,000.00 to $45,000.00 worth of images.  Stockart has gained few, if any, new artists since that time.

## PROCEDURAL HISTORY

This action originated on March 12, 2010.  The Court held a Status Conference on May 27, 2010 to discuss service of process on Engle.  After Stockart's personal service on a person believed to be Engle's father at Engle's last known residence and Engle's failure to answer, Stockart filed a motion for entry of default, which the Clerk granted on June 21, 2010.  On September 28, 2010, Stockart filed the present Motion for Default Judgment.  The Court originally set a hearing on the motion for November 5, 2010; however, it was unclear from the record whether the order was mailed to Engle's last known address.  Thus, the Court reset the hearing and held it on January 5, 2011. Richard Askew, owner and principal of Stockart.com, LLC, appeared and testified on behalf of the Plaintiff.  Engle neither responded to the motion nor appeared at the hearing.

## LEGAL STANDARD

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides that: "[t]he court may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v.*

*Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits."); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00845-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983)).  In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., Ltd. P'ship v. Smith,* 141 F. Supp. 2d 277, 281 (D. Conn. 2001).  A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.,* 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## LEGAL ANALYSIS

With the preceding legal standards in mind and before I consider whether damages are to be assessed in this case, I must address whether the Stockart has established jurisdiction and whether its claims each state a legal basis for relief.

### I.        Jurisdiction

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction.[2]  *See, e.g.*, *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment).  The court is empowered and required to determine any personal jurisdiction issue before considering a motion for default judgment.  *Deville v. Wilson*, 208 F. App'x 629, 631 (10th Cir. 2006) (because plaintiff failed to plead facts indicating the defendant had the requisite minimum contacts with the forum state, the district court had no personal jurisdiction over defendants); *see also  Dennis Garber & Assoc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).

The plaintiff carries the burden of showing the propriety of the court's exercise of personal jurisdiction over a defendant. *Buckhannon v. Monarch Life Ins. Co.*, 46 F.3d 1150, 1995 WL 43593, at *1 (10th Cir. 1995) (unpublished).  However, only the well pleaded facts of a plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

---

[2]Here, Stockart asserts, and the Court finds, subject matter jurisdiction is proper under both 28 U.S.C. § 1331 for Stockart's claims under the Copyright Act of 1976 and the Digital Millennium Copyright Act, and 28 U.S.C. § 1332 based upon diversity of citizenship of the parties and the amount in controversy exceeding $75,000.00.

10

A court may exercise personal jurisdiction over a defendant in three ways: "consent by the parties, [defendant's] presence in the forum state, and actions by the defendant which affect people in the forum state." *Qwest Communs. Int'l v. Thomas,* 52 F. Supp. 2d 1200, 1204 (D. Colo. 1999). Personal jurisdiction can be waived through consent. *See Ins. Corp. of Ireland, Ltd. v. Compaigne des Bauxites de Guinee,* 456 U.S. 694, 703 (1982). Parties may agree in advance to waive personal jurisdiction in a particular forum through a forum selection clause. *Id.* (citing *Nat'l Equip. Rental, Ltd. v. Szuhent,* 375 U.S. 313, 316 (1963)). When parties consent to personal jurisdiction in a certain forum, the Court need not analyze whether the defendant's presence or actions within the forum state suffice to establish personal jurisdiction. *Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-cv-02295-LTB, 2008 WL 5411478, at *1 (D. Colo. Dec. 29, 2008); *QFA Royalties, LLC v. Case*, No. 05-cv-00685-WYD-CBS, 2006 WL 894882, at *3 (D. Colo. Mar. 31, 2006). Rather, the only relevant inquiry is whether the forum selection clause is enforceable. *Leasing, Inc.*, 2008 WL 5411478, at *1.

Stockart's "intentional infringer" warning has a forum selection clause providing that "[d]isputes concerning use of any image on this site will be resolved in the Courts of Colorado. ... Click below to acknowledge that you understand and agree." Exhibit C-2, docket #32. Stockart has established that Engle clicked on the warning approximately 92 times while searching, and allegedly extracting, images from Stockart's website. *See* Exhibit C-1, docket #31.

A forum selection clause is *prima facie* valid and a party contesting it bears a heavy burden of proof. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1972); *see also Edge Telecom, Inc. v. Sterling Bank,* 143 P.3d 1155, 1160 (Colo. App. 2006). In a diversity action such as this, whether a forum selection clause is enforceable is matter of the law of the forum

state. *Yavuz v. 61 MM, Ltd.,* 465 F.3d 418, 428 (10th Cir. 2006).   Under Colorado law,[3] a forum selection clause is enforceable unless it is unfair or unreasonable.  *Adams Reload Co. v. Int'l Profit Assoc., Inc.*, 143 P.3d 1056, 1060 (Colo. App. 2005).  "Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching, or lack of notice, would be sufficient to defeat a contract forum selection clause."  *Id.* (citing *Riley*, 969 F.2d at 957).

Here, Stockart's forum selection clause is *prima facie* valid; Engle has made no argument concerning the fairness or reasonableness of the provision.  Moreover, the Court perceives no reason to find the clause unfair or unreasonable.  As such, the Court recommends finding that Stockart has established personal jurisdiction over Engle through his agreement that "disputes concerning use of any image on [Stockart's] site will be resolved in the Courts of Colorado."

Moreover, Colorado courts have found that the commission of a tort (as opposed to a breach of contract), in itself, creates a sufficient nexus between a defendant and the forum state to satisfy due process and establish specific jurisdiction.  *See Vogan v. County of San Diego*, 193 P.3d 336, 339 (Colo. App. 2008) (citing Colorado Supreme Court cases) ("[t]he long-arm statute is satisfied if either the tortious conduct or the resulting injury occurs in Colorado.").  In this case, Stockart alleges a claim for libel against Engle that resulted in severe financial injury to Stockart, a Colorado resident.  As set forth below, the Court finds that Stockart has established the sufficiency of this claim and recommends that the District Court award damages against Engle.

---

[3]The Court acknowledges that subject matter jurisdiction based upon a federal question also exists in this case; however, the standard for determining the enforceability of a forum selection clause under federal law is the same as in Colorado.  *See Yavuz*, 465 F.3d at 428 (citing *M/S Bremen, GmBH v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

## II.      Sufficiency of the Claims

"A plaintiff is entitled to a determination of liability unless he has failed to state a legal basis

for relief or it is clear from the face of the complaint that the allegations are not susceptible of

proof." *Weft, Inc.*, 630 F. Supp. at 1143.  Here, Stockart alleges the following claims:

A.      <u>Copyright Infringement</u>

There are two elements to a copyright infringement claim: "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.*

*v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). The plaintiff bears the burden of proof on both

elements. *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005).

1.      *Ownership*

The Court accepts Stockart's well-plead allegations, and Stockart has demonstrated through

unchallenged documents and Mr. Askew's testimony, that it owns the copyrights on the images at

issue in this case.

2.      *Copying*

Stockart must show that Engle "unlawfully appropriated protected portions of the

copyrighted work." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993).

This requires proving both: (1) that Engle, as a factual matter, copied portions of Stockart's work;

and (2) that those elements of the work that were copied were "protected expression and of such

importance to the copied work that the appropriation is actionable."  *Id.*; *see also Jacobsen v.*

*Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).

Direct proof of copying is often difficult to demonstrate.  *See Country Kids 'N City Slicks,*

*Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996); *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir. 1999).

Therefore, a plaintiff can indirectly prove copying (in a factual sense) "by establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284.

a.      Access

A plaintiff may meet the initial burden of establishing access "by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work." *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993) (internal quotation marks omitted).  Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, "evidence that only creates a bare possibility that the defendant had access is not sufficient." *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007) (alterations and internal quotation marks omitted) (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A], at 13-21 (2008) ("Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing plaintiff's work - not a bare possibility.")).

Stockart has shown through unchallenged documents and Mr. Askew's testimony that Engle, a registered user of Stockart.com, had opportunities to view and copy the thirty-six (36) images at issue in the case.  By his registration, Engle was granted permission to view the images, for use with an applicable license fee, on Stockart's website.  Then, according to Mr. Askew who developed Stockart's website, Engle would have been able to extract the images (without paying the fee) using a "printscreen" function that allows the user to copy/download an image directly to the user's computer.  Mr. Askew testified that, because of this capability, the Stockart.com program monitors

14

users' activity on the website to search for possible infringement conduct.

        b.     Striking Similarity

"A high degree of similarity may permit access to be inferred." *Gates Rubber Co.,* 9 F.3d at 833 n. 9. Thus, if a plaintiff is unable to demonstrate access, he may establish (factual) copying by demonstrating that the copyrighted work and the alleged infringing work are "strikingly similar." *Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1253 (11th Cir. 2007). A plaintiff who shows a high degree of similarity may satisfy the factual copying requirement with a lesser showing of access and, in fact, a plaintiff may establish the requirement "when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone." *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 371-72 & n. 10 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick,* – U.S. –, 130 S. Ct. 1237, 1247 (2010).

Striking similarity exists when "the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" *Corwin,* 475 F.3d at 1253 (quoting *Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir. 1984)). Further, "the similarities should appear in a sufficiently unique or complex context as to make it unlikely that both pieces were copied from a prior common source." *Selle,* 741 F.2d at 904. However, "[o]ne work does not violate the copyright in another simply because there is a similarity between the two if the similarity results from the fact that both works deal with the same subject or have the same common source." *Dorsey v. Old Sur. Life Ins. Co.,* 98 F.2d 872, 873 (10th Cir. 1938).

Stockart originally attached copies of pages from websites used by Engle (i.e., www.logopond.com and www.coroflot.com) to post his logos/images for sale or use. *See* Exhibit

15

C-3, docket #33. However, certain copies of images are dark, blurred or obstructed, or the images are simply too small to make a comparison to Stockart's proffered images. *See id.* Thus, at the hearing, the Court requested enlarged copies of Engle's images from which to make a proper comparison; Stockart provided clearer, larger copies on January 14, 2011. *See* dockets #54, #55, and #56. Comparing the images, the Court finds that certain of the images used by Engle in his logos are strikingly similar to Plaintiff's Registered Works found on the following exhibits: A-3, A-9, A-12, A-14, A-18, A-23 (lines 3 &4), and A-28 (horse).[4]

### 3. Appropriation Actionable?

Once copying has been established, "liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284. The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.* at 1288.

As set forth above, comparing the copies of images provided by Stockart, the Court has found at least eight (8) of Engle's logos contain images strikingly similar to Stockart's Registered Works. In the same vein, the Court finds substantial similarity between Stockart's protected images and Engle's logos.

Consequently, the Court recommends that the District Court conclude Stockart has stated

---

[4]Stockart also seeks damages for infringement of its images found on Exhibits A-6 and A-16; however, the copies of Engle's logos allegedly incorporating these images are too small or too obscured to make a fair determination as to whether Engle unlawfully extracted Stockart's images.

a viable claim for copyright infringement in violation of the Copyright Act.

B.    Digital Millennium Copyright Act

The DMCA states, in the relevant part,

(b) Removal or alteration of copyright management information. -- No person shall, without the authority of the copyright owner or the law --

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b) (2010).

A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws. *Gordon v. Nextel Communs. & Mullen Advertising, Inc.*, 345 F.3d 922, 927 (6th Cir. 2003).  To prove a 1202(b)(3) violation, the plaintiff must prove that the defendants - or those for whom they are vicariously liable - possessed actual knowledge of the unauthorized change to the copyright management information, because the statute requires the defendant to act "knowing that copyright management information [had] been removed or altered without authority of the copyright owner or the law." *Id.*

17

Copyright management information ("CMI") includes, for example, the title or identifying information of the work, information concerning the author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information. *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (citing 17 U.S.C. § 1202(c)(1)-(3), (6)-(7)). "Courts have applied this statute in a straightforward manner such that Plaintiff here needs only allege (1) the existence of CMI on their artwork; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Id.* (citing *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009)).

Although not evident from Stockart's proffered Exhibits A and B, Mr. Askew testified that all images on Stockart.com contain a copyright notice and the encircled "c" symbol at the bottom of the website screen on which each image appears. Users are informed that removal of any copyright management information from the images is a violation of copyright law. Exhibit C-2, docket #32. Users must acknowledge and agree to this information by clicking the "OK" button before they perform a search of the images. *Id.*

As set forth above, Stockart has demonstrated that Engle clicked the "OK" button approximately 92 times. Exhibit C-1, docket #31. By incorporating Stockart's images into his logos, Engle clearly removed Stockart's copyright management information from the images. *See* Exhibit C-3, docket #33. The Court accepts as true Stockart's allegations and testimony that Engle intentionally removed Stockart's copyright management information despite his knowledge that removal was a violation of the Copyright Act.

Accordingly, the Court recommends that the District Court conclude Stockart has stated a viable claim for removal of its copyright management information in violation of the Digital

Millennium Copyright Act.

    C.    <u>Libel</u>

This Court recommends that the District Court assume supplemental jurisdiction over Stockart's state law claim for libel pursuant to 28 U.S.C. § 1367(a), as Plaintiff's copyright claims arise out of the same transactions and incidents indicating they form part of the same case or controversy.

Under Colorado law, a plaintiff must prove the following elements by a preponderance of the evidence to sustain a claim of libel: (1) the defendant published or caused to be published, (2) written defamatory statements, (3) about the plaintiff, and, (4) the publication of the defamatory statements caused special damages to the plaintiff. *See* CO-JICIV 22:5; *see also Walters v. Linhof,* 559 F. Supp. 1231, 1234 (D. Colo. 1983) (citing elements of defamation claim). A statement may be defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Burns v. McGrawHill Broadcasting, Inc.,* 659 P.2d 1351, 1357 (Colo. 1983) (citing CO-JICIV 22:7).

Libel is characterized either as *per se* or *per quod.* To be libelous *per se,* a statement: "must contain defamatory words *specifically directed at the person claiming injury,* which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious." *Stump v. Gates*, 777 F. Supp. 808, 825-26 (D. Colo. 1991) (quoting *Lininger v. Knight,* 226 P.2d 809, 813 (Colo. 1951)) (emphasis in original); *see also Ramsey v. Fox News Network*, LLC, 351 F. Supp. 2d 1145, 1151 (D. Colo. 2005) ("[t]o determine defamation *per se,* the Court must examine the statement itself without the aid of inducements, colloquialisms, innuendoes or explanatory circumstances.") (citing *Arrington v. Palmer*, 971 P.2d 669, 671 (Colo. App. 1998)). A statement

constitutes defamation *per se* if it imputes a criminal offense. *Ramsey*, 351 F. Supp. 2d at 1151. Libel *per se* is actionable without an allegation of actual damages. *Stump*, 777 F. Supp. at 825-26 (citing *Inter-State Detective Bureau, Inc. v. Denver Post, Inc.,* 484 P.2d 131, 133 (Colo. App. 1971)). A court decides the legal question whether a writing constitutes libel *per se*. *Id.; Lininger,* 226 P.2d at 813.

Any libel that, unlike libel *per se,* does not carry a defamatory imputation on its face is libel *per quod* which is actionable only where special damages are pled. *See, e.g., Lind v. O'Reilly,* 636 P.2d 1319, 1321 (Colo. App. 1981); *Inter-State Detective,* 484 P.2d at 133. Libel *per quod* exists where the person to whom the defamatory statement applies can only be ascertained by introducing extrinsic proof. *Lind,* 636 P.2d at 1320. "Special damages" are limited to specific monetary losses that a plaintiff incurs because of the defamatory publication. *Id.* at 1321. They do not include injuries to a plaintiff's reputation or feelings which do not result in monetary loss. *Id.* Rather special damages "must result from conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." *Id.* (quoting Restatement (Second) of Torts § 575, comment (b)).

Here, Stockart alleges Engle's published statement that Stockart "lifted" the images from Engle's "Logopond showcase" (*see* docket #38-1 at 3) is libelous per se. Certainly, falsely accusing another of theft, a criminal offense, constitutes libel per se. However, even if the District Court were to conclude Engle's published statement is not libelous per se, Stockart has demonstrated special damages for a libel per quod claim based upon the published theft statement and statements that Stockart was suing Engle for payment of license fees for images that belonged to Engle.

The Court finds Mr. Askew's testimony credible that, although Stockart, like most businesses

in America, has suffered a financial downturn due to the current economic recession, the chronology of events demonstrates Stockart also suffered financial injury due to Engle's statements.  For example, in 2006 Stockart's license (as opposed to gross) revenues totaled approximately $170,000.00, and in 2007, approximately $150,000.00.  Then, in 2008, Stockart's license revenues totaled approximately $90,000.00.  Askew testified that the drop was likely due to the onset of the economic recession.

However, after April 2009, Stockart's license revenues totaled approximately $24,000.00 and in 2010, the revenues dropped further to approximately $15,000.00.  Mr. Askew testified that, after April 2009 when Engle published his statements, Stockart lost approximately 20-30 artists and $40,000.00 to $45,000.00 worth of images.  Since that time, Stockart has gained few, if any, new artists.

In response to Engle's statements, a significant number of persons contacted Stockart to inform the company not only that they would never use Stockart.com again, but also that they would recommend to others in the industry never to use Stockart.com.  *See* Exhibit C-7, docket #40-1; *see also* Declaration of Richard Askew, ¶ 13, docket #43-1.  Such concerted action became known as the "Stockart boycott."  *See* docket #40-1 at 6.  This evidence together with evidence of the significant drop in license revenues in 2009 suffice to demonstrate special damages necessary to state a viable claim for libel.

Accordingly, the Court recommends that the District Court find Stockart has stated a viable claim for libel per se, or, in the alternative, libel per quod in this matter.

## III.    Award of Damages

The burden is on the plaintiff to establish entitlement to recovery of damages against a

defaulting defendant. *See Cablevision of S. Conn., Ltd. P'ship v. Smith,* 141 F. Supp. 2d 277, 282 (D. Conn. 2001). Damages must be established by proof, unless they are either susceptible of mathematical computation or liquidated as of the default. *Id.* (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)). A conclusory affidavit fails to establish a basis for the damages a plaintiff seeks. *See Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc.,* 655 F. Supp. 2d 177, 189-190 (E.D.N.Y. 2009) ("The plaintiff must still prove damages in an evidentiary proceeding at which the defendant has an opportunity to contest the claimed damages.").

A.   Copyright Claim

A person whose copyright has been infringed may choose to recover either actual or statutory damages. Section 504(b) of the Copyright Act provides, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b). Alternatively, Section 504(c)(1), provides in pertinent part: "[T]he copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in that action, with respect to any one work ... in a sum not less than $750 or more than $30,000 as the Court considers just." 17 U.S.C. § 504(c)(1).

Section 504(c)(2) provides an award for willful violations of not more than $150,000.00. 17 U.S.C. § 504(c)(2). Copyright infringement is "willful" for purposes of awarding enhanced damages if the defendant acted with knowledge that his conduct constituted copyright infringement. *Rocking Chair Enters., LLC v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1269 (W.D. Okla. 2005).

Here, for its copyright infringement claim regarding Plaintiff's Registered Works, Stockart

22

seeks actual damages in the amount of $100,000.00 or, alternatively, a statutory award of damages, and requests the maximum $30,000.00 for each infringement of its ten (10) registered works. Docket #29 at 24-25.  In addition, Plaintiff requests the $150,000.00 maximum award for willful violations of the ten (10) images for a total of $1,500,000.00.  *Id.*

The court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quoting *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984)).  In *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231 (1952), the Supreme Court held that an infringing defendant may not limit a plaintiff's recovery to actual damages proved.  Thus, trial courts are vested with broad discretion to determine whether  it is more just to allow a recovery based upon a calculation of actual damages or upon an estimate within the limits permitted by the statute.  *Id.* at 231-32.  The Supreme Court said:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to the infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate statutory policy.

*Id.*, 344 U.S at 233.  In other words, "statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement."  *Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1263-64 (D.N.M. 2009) (quoting *Johnson v. Jones*, 149 494, 504 (6th Cir. 1998)).  Recognizing the important deterrent purpose served by statutory damages, the courts routinely award

as statutory damages in cases such as this amounts that are between two and three times license fees. *Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1130-31 (D. Colo. 2008) (citing cases) (awarding nearly three times the license fee where court found willful violation).

Here, Stockart failed to provide to the Court the actual license fee for each extracted image; rather, the evidence shows that Engle paid a license/use fee of $395.00 for an image in June 2008 and Stockart billed Engle for sixty-eight images it believed Engle had extracted for a reduced price of $275.00 per image for a total of $18,700.00. However, Mr. Askew testified that Stockart charges fees for the *logo use* of artwork ranging from $7,500.00 to $12,500.00, depending upon the size of the company and the nature of the logo; the fee is determined at the time of the user's application. Askew asserts that "[a] common fee for a small business is $10,000.00 for the logo use of art." Askew Affidavit, ¶ 9, docket #30-2 at 3. Due to the uncertainty of the actual license fees that would be charged for the images at issue, the Court is unable to determine Stockart's *actual* lost profits resulting from Engle's infringing conduct. *See* 17 U.S.C. § 504(b). Consequently, the Court will proceed to determine a just award of statutory damages. *See F.W. Woolworth Co.*, 344 U.S. at 232.

The Court believes Stockart's request for the maximum statutory award for each willful infringement is excessive. Rather, the Court finds reasonable the rationale of a majority of courts awarding statutory damages that two to three times license fees is just for a willful violation. *See Girlsongs*, 625 F. Supp. 2d at 1131 (citing cases). Here, the Court has determined that Engle used each of eight (8) images at issue in logos distributed for sale on his websites. Stockart argues that a $10,000.00 license fee for logo use is reasonable under the circumstances of this case, and the Court agrees. Accordingly, this Court recommends finding that a license fee for logo use of $10,000.00 per image for each of the eight extracted images is appropriate. Under this scenario,

24

Engle would have paid approximately $80,000.00 in license fees to Stockart for the eight extracted images.

Furthermore, the Court recommends finding that an award of three times the logo use fees is appropriate for Engle's willful violation of the Copyright Act. The evidence demonstrates that Engle knew about, but repeatedly ignored, Stockart's notices of copyright by extracting Stockart's images for his own use without paying license fees. Engle incorporated the images into logos that he posted on various websites for sale. For Engle's willful violations of the Copyright Act, the Court recommends awarding Stockart a total of $240,000.00, which is within the statutory range of $750.00 to $30,000.00 per infringement under 17 U.S.C. § 504(c)(1).

B.   DMCA Claim

As in its copyright infringement claim, Stockart seeks an award of actual damages or, in the alternative an award of statutory damages for Engle's removal of Stockart's copyright management information from all images at issue in this case. With regard to damages under the DMCA, 17 U.S.C. § 1203(c)(3)(B) provides, in relevant part:

> A complaining party may elect to recover an award of statutory damages for each violation of section 1202 in a sum of not less than $2,500 or more than $25,000.

As set forth herein, Stockart has failed to provide the information necessary to determine actual damages (i.e., lost profits) in this case. Therefore, the Court will proceed to determine a just award of statutory damages.

Courts interpreting Section 1203(c)(3)(B) in the context of unlawful distribution of a copyrighted work on a website have found that "each violation" constitutes only the violative acts performed by the defendant, or in other words, "each time a defendant unlawfully posted an unauthorized product for distribution on the internet." *Stockwire Research Group, Inc. v. Lebed*,

577 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2008) (citing *McClatchey v. Associated Press*, 2007 WL 1630261, at *6 (W.D. Pa. June 8, 2007)).

In analyzing the motion, the Court has found eight infringements of Plaintiff's Registered Works.  In addition, comparing Plaintiff's Unregistered Works to the logos found on Engle's websites, the Court finds that Engle extracted without paying license fees the following twenty-six images found on Stockart's exhibits: B-2, B-3, B-4, B-5 (both images), B-6, B-7, B-8 (mountain), B-9, B-10, B-13, B-16 (eagle), B-17 (udders), B-19 (jester), B-20, B-21 (both images), and B-22. By incorporating all extracted images into his logos and posting them on websites for sale, Engle unlawfully removed Stockart's copyright management information, resulting in a total of thirty-four (34) violations of 17 U.S.C. § 1202.  The Court recommends that the District Court award Stockart $10,000.00 per removal for each of the thirty-four willful violations, resulting in a total award of $340,000.00, which is within the statutory range set forth in 17 U.S.C. § 1203(c)(3)(B).

C.    Libel

In its motion, Stockart requests an award of $707,730.00 for lost revenues over the course of "30 months following publication." The Court finds Stockart's request excessive for two reasons: first, thirty months have not passed since Engle's April 2009 internet postings of the libelous statements, and second, Mr. Askew testified that Stockart has suffered some of its lost revenues due to the economic recession. *See also* Askew Affidavit, ¶ 17, docket #43-1.  At the hearing, Stockart modified its request seeking $107,338.00 in lost revenues over the course of eighteen (18) months plus treble damages presumably pursuant to Colo. Rev. Stat. § 13-21-102(3).

This Court finds § 13-21-102 inapplicable to this case.  First, the statute applies to "all civil actions in which damages are assessed by a jury." Colo. Rev. Stat. § 13-21-102(1)(a).  Stockart has

26

failed to demonstrate that the statute applies in a default judgment context.  Second, even if the statute applies generally here, subsection 102(3) does not.  The subsection provides that a court may increase an award of exemplary damages to a sum not to exceed three times the amount of actual damages <u>only</u> if (a) the defendant has continued the unlawful behavior during the pendency of the case, or (b) the defendant has acted willfully during the pendency of the case to aggravate the damages when he or she knew or should have known such action would produce aggravation.  Colo. Rev. Stat. § 13-21-102(3)(a) & (b).  Stockart has proffered no argument nor evidence of any wrongdoing by Engle during the pendency of this proceeding.  In fact, Mr. Askew testified that Engle removed the infringing logos from his websites in 2009 following the publication of an internet article (on www.logoworks.com) exposing his misconduct.

It is unclear whether Stockart's request for $107,338.00 in lost revenues takes into account Mr. Askew's testimony that a "large impact" on Stockart's revenues "was from the bad economy." Nevertheless, the Court finds that Stockart suffered economic damage as a result of Engle's publications of his libelous statements and, considering the number of persons who angrily "boycotted" Stockart.com together with Mr. Askew's estimates of the loss of 20-30 artists and $40,000 to $45,000 in lost images, the Court concludes that $50,000.00 is a reasonable estimate of Stockart's lost revenues due to Engle's false statements.  Accordingly, this Court recommends that the District Court award Stockart $50,000.00 in damages for its libel claim.

    D.    <u>Injunctive Relief</u>

The Copyright Act, 17 U.S.C. § 502(a), provides in pertinent part: "Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright."  Likewise,

27

the DMCA, 17 U.S.C. § 1203(b)(1), provides that courts may grant temporary and permanent injunctions on reasonable terms to prevent or restrain a violation of the Act.

In its Complaint, Stockart seeks injunctive relief under both § 502 and § 1203 in the form of permanent injunctions restricting Engle from further infringing its copyrighted works and requiring Engle to destroy all materials bearing the infringed images. However, Stockart did not request any injunctive relief in the present motion.[5] Although the Court believes that injunctive relief may be appropriate here, I will not recommend an award that has not been requested on default judgment.

## IV.    Attorney's Fees

The Copyright Act provides for the imposition of costs and attorney's fees in favor of the prevailing party:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Girlsongs,* 625 F. Supp. 2d at 1132 (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 886 F.2d 1545, 1556 (9th Cir. 1989)).  In determining the reasonableness of requested fees, the following non-exclusive factors may guide a court's exercise of its discretion:

---

[5]The Court notes that Fed. R. Civ. P. 54(c) provides, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  The Court finds nothing in the rule, nor in the cases interpreting it, the authority to award relief that appears in the complaint but that is not requested in the motion. *See, e.g., Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006) ("Rule 54(c) ... establishes a ceiling rather than a floor on damages.").

"frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Meshworks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1270 n.11 (10th Cir. 2008) (quoting *Fogarty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *Palladium Music*, 398 F.3d at 1200.

In this case, Engle not only infringed upon Stockart's copyrights, but did so knowingly and deliberately.  In addition, Engle refused to obtain permission to extract copyrighted materials, and he forced this matter to be litigated.  *See Girlsongs*, 625 F. Supp. 2d at 1132.  Particularly in need of advancing considerations of compensation and deterrence, this Court recommends finding that Stockart is entitled to recover reasonable attorney's fees and costs in this matter.

The Court's Local Rule 54.3 concerning "Attorney's Fees" requires:

**A. Motion Supported by Affidavit.** Unless otherwise ordered by the court, a motion for attorney fees shall be supported by one or more affidavits.

**B. Content of Motion.**  A motion shall include the following for each person for whom fees are claimed:

> 1. a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed; and
>
> 2. a summary of relevant qualifications and experience.

When considering a claim for attorney's fees, the moving party bears the burden of proving his entitlement to an award, as well as the appropriateness of the hours expended and the hourly rate sought. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous

time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.,* 157 F.3d 1243, 1250 (10th Cir. 1998); *see also Infant Swimming Research, Inc. v. Faegre & Benson, LLP,* No. 07-cv-008390LTB-BNB, 2009 WL 3246138, at *2 (D. Colo. 2009) (unpublished).

Stockart has furnished the Court with a Declaration of James Lorin Silverberg, attorney and resident of the State of Maryland, in support of its request for an award of $84,080.00 in fees.[6] *See* docket #30-3. Mr. Silverberg attests that he has been a copyright lawyer for approximately 30 years and charges an hourly rate of $524.50. He is a member and officer of local chapters and organizations devoted to graphic design and art, an author of published articles on copyright law and legal aspects of the design and illustration industry, and an adjunct professor of law teaching in his field of expertise. Mr. Silverberg attests that his hourly rate is comparable to those of other attorneys in his field, particularly of an attorney whose $530 rate was approved by the Second Circuit. The Court recommends that the District Court find Mr. Silverberg's hourly rate of $524.50 to be reasonable.

Mr. Silverberg asserts that he has expended more than 160 hours litigating this case. On its face, the Court finds this estimate excessive, particularly for a case having no discovery and no trial. A review of Mr. Silverberg's itemization of hours expended (docket #57-1) reflects that he himself billed approximately 128 hours through the date of his affidavit, September 28, 2010 (his law clerk

---

[6]At the hearing, the Court granted Stockart permission to file a supplement to its motion requesting an award of all fees through the January 5, 2011 hearing date on or before January 13, 2011; however, Stockart did not do so.

30

billed another 56 hours at $100/hour for legal research).[7]  However, for a copyright case in which

Mr. Silverberg, an experienced copyright lawyer, was responsible for researching and drafting a

complaint, arranging service of process, drafting and filing a one-page motion for entry of default,

drafting and filing a motion for default judgement and preparing the applicable exhibits, the Court

recommends finding that 75 hours is a reasonable estimate of attorney hours spent in this case

through September 29, 2010.  Consequently, this Court recommends that the District Court award

Stockart, the prevailing party, $39,337.50 in attorney's fees.

In addition, Stockart is entitled to recover costs and post-judgment interest as the prevailing

party in this action.  *See* 17 U.S.C. § 505; *see also* 28 U.S.C. § 1961 ("[i]nterest shall be allowed on

any money judgment in a civil case recovered in a district court.").  However, Stockart failed to

request awards of costs and post-judgment interest in its motion.

## CONCLUSION

Stockart has established through testimonial and documentary evidence that the Court may

exercise jurisdiction over Engle, a New Mexico resident, that its claims are sufficiently stated, and

that it has suffered economic injury justifying an award of damages against Engle.  Based on the

foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the

District Court **grant in part and deny in part** Plaintiff's Motion for Entry of Default Judgment

against Defendant pursuant to Fed. R. Civ. P. 55 [filed September 28, 2010; docket #29] as follows:

a.      Find that the Court has jurisdiction over Stockart's claims against Engle;

b.      Find Engle liable for Stockart's copyright infringement claims and award Stockart

---

[7]The Court notes that the billing reflects Silverberg and his law clerk expended more than
100 hours preparing the 25-page motion for default judgment and exhibits.

damages in the amount of $240,000.00;

c.       Find Engle liable for Stockart's Digital Millennium Copyright Act claim and award

Stockart damages in the amount of $340,000.00;

d.       Find Engle liable for Stockart's libel claim and award Stockart damages in the

amount of $50,000.00; and

e.       Award Stockart attorney's fees in the amount of $39,337.50.

Dated this 18th day of February, 2011, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge